# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RANDY'S TRUCKING, INC., et al., | ) | 1:08cv0819 OWW DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING DEFENDANTS' MOTION FOR |
| Plaintiffs, | ) | GOOD FAITH SETTLEMENT |
| | ) | DETERMINATION |
| v. | ) | |
| | ) | (Documents 74, 75) |
| AMTRAK, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants National Railroad Passenger Corporation ("Amtrak") and Burlington Northern Santa Fe Railroad ("BNSF") filed the instant motion for good faith settlement on June 15, 2009.[1] The action was referred to the undersigned for Findings and Recommendation to the District Judge.

## BACKGROUND

This is one of three consolidated actions arising out of an accident between an Amtrak train and truck owned by Randy's Trucking, Inc. ("Randy's"), on July 19, 2007. In this lead case, Plaintiffs Randy's and Star Insurance Co. filed an action for property damage against numerous

---

[1] The motion was originally filed as Plaintiffs' motion to vacate the Court's May 27, 2009, order finding the settlement to be in good faith. At the September 4, 2009, hearing on the motion, the Court indicated that the order was issued prematurely and would be vacated. The parties agreed to submit additional briefing to allow the Court to determine whether the settlement is in good faith. The Court vacated the May 27, 2009, order on December 17, 2009.

1

Defendants, including municipal Defendants and Amtrak and BNSF. Plaintiffs believe that the location of a stop sign immediately to the west of the railroad tracks is so close to the tracks that a tractor trailer rig cannot stop at the sign without leaving part of the rig on the tracks. Amtrak and BNSF filed cross-complaints for property damage, etc., against Randy's and Fernando Sandoval, the driver.

In the consolidated action 1:09cv331 OWW DLB, Plaintiffs Robert, Rachel, Jessica and Erica Garcia filed a personal injury action against Amtrak and Randy's in February 2009. After consolidation, Randy's filed a cross-claim for indemnification against Amtrak.[2]

## DISCUSSION

A motion for good faith settlement determination is based upon California Code of Civil Procedure Section 877, which states, in pertinent part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

See Rutgard v. Haynes, 61 F.Supp.2d 1082, 1085 (S.D. Cal. 1999).

California Code of Civil Procedure Section 877.6 provides the procedural process by which a party may move for a good faith settlement determination. While the procedures of Section 877.6 do not govern a federal action, the Court has discretion to conduct a hearing pursuant to that section if it determines that such a hearing would be useful. Fed. Sav. and Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir.1990). Although Randy's and Sandoval argue against it, the Court will exercise its discretion and decide the issue under Section 877.6.

---

[2] The third action is *Roi Smith v. Randy's Trucking, Inc., et al.*, 1:09cv211 OWW DLB, but it is not relevant to this motion.

2

In Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 38 Cal.3d 488, 499-500 (1985), the California Supreme Court set forth factors that a court should consider in determining whether the settlement was made in good faith. These factors are: (1) Whether the amount of the settlement is within the reasonable range of setting tort feasors proportional share of comparative liability; (2) Whether the amount of the settlement is a rough approximation of the plaintiff's total recovery in the tort feasor's proportional liability; (3) The amount paid in settlement; (4) The allocation of settlement proceeds among plaintiffs; (5) The recognition that a settlor should pay less in settlement than he would if he were found liable after trial; (6) Financial conditions and insurance policy limits of the settling tort feasor; (7) A recognition that the pertinent analysis must be based on the information at the time of the settlement; and (8) The existence of collusion, fraud or tortious conduct intended to injure the interests of the non-settling parties. Id.

Amtrak and BNSF argue that the $10,000 settlement is made in good faith under the Tech-Bilt factors. The evidence at the time of settlement shows that the settlement is reasonable given Amtrak and BNSF's comparative liability. BNSF appears to have had no role in the placement of the subject stop sign. Exhibits D, E and F to Declaration of Jason B. Shane. The evidence also suggests that the Amtrak train was traveling at a speed within the allowed limits, and any claim to the contrary would be preempted. CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993); Declaration of Jason B. Shane, ¶ 8.

The evidence also shows that the Garcia Plaintiffs had total medical bills of $14,304.57. Robert Garcia received chiropractic care from July 25, 2007, through October 2007 and incurred $3,345.00 in medical bills. Rachel Garcia also received chiropractic care from July 25, 2007, through October 2007 and incurred $3,620.00 in medical bills. Jessie Garcia, who was taken by ambulance from the scene of the accident but discharged shortly thereafter with a left shoulder abrasion, received chiropractic care from July 25, 2007, through October 2007 and incurred $6,994.57 in medical bills. Erica Garcia's medical treatment consisted of one appointment with a chiropractor on July 25, 2007, for a total of $345.00 in medical bills. Declaration of William M. Margolin, ¶ 3.

The $10,000 settlement is to be divided as follows: $3,000 to Robert Garcia, $3,000 to Rachel Garcia, $3,000 to Jessie Garcia, and $1,000 to Erica Garcia.

Defendants' counsel suggests that a similar case would normally produce a jury verdict of $30,000 to $40,000, and that the Garcia Plaintiffs made a prior demand of $20,000. Declaration of Jason B. Shane, ¶ 10. Amtrak and BNSF believes, and this Court agrees, that the $20,000 demand, combined with the maximum settlement value of the action and lack of Amtrak and BNSF's liability, makes the settlement offer more than their true share of liability.

Pursuant to Section 877.6(d), the party contesting the lack of good faith has the burden of proof on that issue. Here, however, Randy's and Sandoval have failed to set forth their analysis under Tech-Built. Instead, they make speculative arguments as to the liability of Amtrak and BNSF and request additional time for discovery. This determination must be made based on evidence at the time of settlement, however, making further discovery unnecessary. Randy's and Sandoval have simply failed to demonstrate that the settlement is not in good faith.

Accordingly, the Court finds that the settlement agreement between Amtrak and BNSF and the Garcia Plaintiffs in the amount of $10,000.00 was made in good faith pursuant to California Code of Civil Procedure Sections 877 and 877.6. The Court further finds that all future cross-complaints filed in this action for equitable comparative relief, or partial or comparative indemnity based upon comparative negligence or comparative fault against Amtrak and BNSF, are barred.

## RECOMMENDATION

The Court recommends that the Motion for Good Faith Settlement Determination be GRANTED.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be

1 captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will
2 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are
3 advised that failure to file objections within the specified time may waive the right to appeal the
4 District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6 IT IS SO ORDERED.
7    Dated:    **January 7, 2010**        **/s/ Dennis L. Beck**
                                                             UNITED STATES MAGISTRATE JUDGE